.175 So. 58

**GAHAGAN v. RARITAN CO., Inc., et al.**

No. 33807.

May 24, 1937.

Dickson & Denny, of Shreveport, for appellants.

Herold, Cousin & Herold, of Shreveport, for appellee.

ODOM, Justice.

Plaintiff brought suit to foreclose two mortgages via ordinaria. The only defense was that both notes were prescribed. The plea of prescription was overruled and there was judgment for plaintiff as prayed for. Defendant appealed.

The two mortgages were on the same piece of property, a lot and residence thereon in the city of Shreveport. The first was for $5,000, dated November 23, 1921, the note being made payable one year from its date. The second mortgage was for $3,000, dated March 5, 1926, and made payable on November 23, 1926. The foreclosure suit was filed on January 9, 1935, so that each of the notes was prescribed on its face at the time the foreclosure suit was filed.

Plaintiff's contention is that prescription on the notes was interrupted by payments. It is conceded by counsel that when suit is brought on a note which is prescribed on its face, and it is claimed that prescription has been interrupted, the burden is upon the plaintiff to establish that fact. In order to show that prescription had been interrupted in this case, plaintiff proved that numerous payments had been made on each note, and it is conceded by counsel for defendant that these payments, if made by the maker of the notes, the debtor, were sufficient to keep the notes alive. But the defense is that the payments were not made by or for the debtor; that the debtor had no knowledge of them.

Plaintiff, we think, discharged the burden of proof which the law casts upon him of showing the interruptions. The payments were all made by J. E. Kennedy, who had no connection with the Raritan Company, Inc., the maker of the notes. Mr. Kennedy said he made some of the payments to Mr. Gahagan, the holder of the notes, personally, and some to the First National Bank, which held them during a considerable period of time for collection. He was shown the notes with credits marked on the back of them and was asked if he made those payments, and he said that he did. Asked why he made them, he said: "For $640 a year, for the privilege of living in the residence," which he said belonged to the Raritan Company, Inc., the maker of the notes. He said he lived in the house for a number of years, but never paid the owners of it any rent and was never called upon to pay, but that he had an agreement with either Mr. Denny or Mr. Hamiter to the effect that if he would pay the interest on the notes, amounting to $640 per annum, he might occupy the residence and would not be called upon to pay rent. The testimony shows that Mr. Denny organized the Raritan Company, Inc., was its secretary, and handled its affairs, and that Mr. Hamiter was its president.

Mr. Denny was called to the stand after Mr. Kennedy had testified. Presumably he heard what Mr. Kennedy said about the agreement to pay interest on the notes in lieu of rent. If he did not, evidently his counsel did. But he did not deny that such an agreement was made with Mr. Kennedy either by himself or by Mr.

Hamiter. In fact, he was not questioned about it. Mr. Hamiter, the president of the company, was not called as a witness.

Mr. Kennedy's testimony, not being disputed, must be accepted as true and as proof that the payments were made by him for and on behalf of the corporation. The bank clerk who handled the notes for Mr. Gahagan, the plaintiff, testified that he sent the notices and demands to pay interest to the Raritan Company, Inc., and Mr. Kennedy testified that as soon as he got the notices he went to the bank and made the payments in accordance therewith. Mr. Kennedy did not say how these notices came into his possession. Having been mailed to the Raritan Company, that company must have either handed or mailed them to Mr. Kennedy. It is certain that none of the notices was mailed to Kennedy.

Mr. Denny admitted that the mortgaged property stood of record in the name of the corporation, that he had executed the mortgages for it by virtue of a resolution of the board of directors, that he knew that the notes were outstanding, that the corporation had made no payments; and admitted that he knew Mr. Kennedy was occupying the residence and had never paid any rent. He said he knew nothing of the payments, that he had never paid any attention to the property, which was not listed on the books of the corporation as its property. He was asked: "You knew when you signed the notes that you had some interest in it, didn't you?" He answered: "It was done as an accommodation to Mr. Kennedy."

But he did not explain why it was that the property stood in the name of the corporation, or just why the corporation borrowed $8,000 from Gahagan, or who got the money, or how Kennedy was "accommodated" by the transaction. We infer from his testimony that he intended to convey the idea that while the corporation was the record owner of the property, it was being held for Kennedy. But that theory is in conflict with the testimony of Mr. Kennedy, who said that the corporation owned it.

However that may be, the facts are that the corporation is the record owner of the property, that it executed the notes and mortgages, that the notes are outstanding, have never been paid; and that while each note is prescribed on its face, prescription was interrupted by payments, and plaintiff has proved that the payments were made for and on behalf of the debtor. This holding disposes of the only pertinent issue involved.

The judgment is affirmed at the cost of the appellant.